IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SORGEN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, et. al.,<br><br>　　　　Defendants. | No. C 05-03172 TEH<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

　　　This matter came before the Court on Monday, August 28, 2006 on (1) Defendants' Motion for Summary Judgment and (2) Plaintiff's Motion for Partial Summary Judgment. Having carefully considered the written and oral arguments of counsel, and the record herein, the Court grants in part and denies in part Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment for the reasons set forth below.

I BACKGROUND

　　　This action arises out of an incident in the early morning of July 11, 2004 which culminated in the arrest of the Plaintiff, William Sorgen ("Sorgen"). The following facts are essentially undisputed except where noted. Sorgen went out with friends the evening of July 10, 2004 to the North Beach neighborhood of San Francisco to celebrate his bachelor party. They went to two bars and then the Broadway Showgirls strip club ("Club"). After about 35-45 minutes at the Club, Sorgen went to the restroom. Three of his friends went outside. A security person from the Club flagged down a passing police officer, Defendant Brian Oliver ("Oliver"), out of concern that two of those

1  friends might be causing minor damage to a parked car through their horseplay or
2  fighting. When Oliver went over to the three men they were laughing and talking and
3  showed signs of intoxication. After Oliver began making inquiries, two of the friends
4  ran off. Oliver chased them briefly but then broadcast for assistance from other police
5  officers and returned toward the area of the Club. There he encountered the third friend,
6  Dominic Campese ("Campese"), who had now been joined by Sorgen and a fourth
7  friend, Brian Markley ("Markley"). Campese approached Oliver to ask him what had
8  happened to the other two friends at which point Oliver arrested Campese for a violation
9  of California Penal Code § 647(f) (public intoxication). Plaintiff does not dispute that
10 Campese was drunk at the time of his arrest. *See also* Markley Dep. at 38-39  (agreeing
11 that Campese was "probably drunk").

12    Oliver put Campese in handcuffs and started walking him down Broadway toward
13 the intersection with Columbus where other officers were more likely to be. He was
14 concerned about being in the area alone with Campese because, typically, a large
15 proportion of the people walking around late on a weekend night in North Beach are
16 intoxicated, and in the past he had been involved in an incident where a bystander
17 attacked an officer who was in the process of making an arrest.

18    Sorgen and Markley began to follow Oliver and Campese down Broadway.
19 According to Sorgen, Oliver turned back at a certain point and said "What? What do you
20 want?" *See* Sorgen Dep. at 60. Sorgen (who by his account was at least 25 feet away
21 and by Oliver's account only 6 feet away) started inquiring as to what was happening to
22 his friend and where he was being taken. Oliver told them to "get out of here" or words
23 to that effect.

24    Both parties agree that Sorgen responded that he knew his rights and that he had a
25 right to stand where he was and observe and ask questions. While the details of what
26 occurred next are in some dispute, it is not disputed that Oliver expressly demanded that
27 Sorgen and Markley move further back two times. Sorgen refused to move back and
28 instead reasserted that he had a right to be where he was. Sorgen testified (and Oliver

2

1  does not dispute) that Oliver than walked toward Sorgen and Markley, pointed over their
2  shoulders, told them "you need to go over there," and then returned back to Campese.
3  Sorgen Dep. at 77. *See also* Markley Dep. at 57-58 ("And the police officer says, 'Well,
4  you need to get back right now, and I'm serious.' And he points. And Bill says, "I don't
5  have to. I don't have to move. I can watch you . . ."'").  While Markley moved back at
6  this point, Sorgen again refused to comply.  Oliver subsequently turned back to
7  Campese, and crouching down, sat Campese down against a doorway.

8       At this point, Oliver's version is as follows.  He states that when he turned back
9  around, he saw Sorgen approaching within an arm's distance.  Then, in an effort to
10 physically move Sorgen back, he pushed Sorgen on his chest with his open palm and
11 forced him backwards a little. Oliver Dep. at 100-102.  Sorgen moved forward again and
12 Oliver grabbed his collar and said "I'm not going to tell you again to back up." *Id*. at
13 103, 109.  Sorgen stood his ground and/or advanced very slightly again toward Oliver.
14 *Id.* at 103, 113.  Oliver then radioed for back up, took out his baton, and struck Sorgen
15 three or four times on his lower body.

16      Sorgen's version is similar except that he states that when Oliver sat Campese
17 down in the doorway he (Sorgen) was still 12-15 feet away.  He states that Oliver spun
18 around, took several running steps, lunged, and struck him in the chest with the open
19 palm of his hand while saying loudly "I told you to get out of here."  Sorgen Dep. at 90.
20 Sorgen stumbled back a few feet but did not otherwise move back. Sorgen exclaimed
21 surprise that Oliver had just assaulted him and asked for his name and badge number.
22 Sorgen Dep. at 93.  Oliver radioed for back up, and then took out his baton and struck
23 Sorgen three times, in the buttocks, calf, and behind the knee.  Sorgen Decl. at ¶ 13.

24      Oliver states, and Sorgen does not dispute, that Oliver smelled alcohol on
25 Sorgen's breath when he got close to him.  Sorgen also admits that he was "a little
26 buzzed." Sorgen Dep. at 176.  There is no evidence, however, that Sorgen's speech was
27 slurred or that he was unsteady on his feet.
28

1   There is no dispute that after Oliver struck Sorgen with the baton, Sorgen fell
2 downward, and was immediately arrested without a warrant for violating (1) Calif. Penal
3 Code §148 which makes it a crime to wilfully resist[], delay[], or obstruct[] any. . . peace
4 officer . . . in the discharge or attempt to discharge any duty, and (2)  Calif. Penal Code
5 § 647(f) which makes it a crime to be  "found in any public place under the influence of
6 intoxicating liquor [or] drug. . . in a condition that he or she is unable to exercise care for
7 his or her own safety or the safety of others."

8   Sorgen was then taken into custody.  The baton strikes caused bruises that
9 disappeared after a few weeks.  There is no dispute that Sorgen did not seek out any
10 medical treatment for the bruises.  Although the charges were later dropped, Sorgen
11 contends that the incident disrupted his wedding plans and preparations, humiliated him,
12 and caused him general anxiety, malaise and embarrassment.

13   Sorgen subsequently filed this action alleging violations of his civil rights under
14 42 U.S.C. § 1983 and California law.  Specifically, he argues that (1) he was falsely
15 arrested because Oliver lacked probable cause to arrest him for violations of either Calif.
16 Penal Code § 148 or § 146(f),  (2) he was arrested in retaliation for the exercise of his
17 first amendment rights,  and (3) that Oliver used excessive force against him.  He also
18 asserts common law tort claims for false imprisonment, malicious prosecution,
19 emotional distress, negligence, and a statutory claim under the Bane Act.

20   Defendant has moved for a summary judgment on all of Sorgen's claims.  Sorgen
21 seeks a partial summary judgment on his claims that he was (1) falsely arrested without
22 probable case, (2) subjected to excessive force,  and (3) improperly subjected to a
23 custodial arrest.[1]  The Court addresses all of these issues in turn below.

---

[1] In his opposition to Defendant's Motion, Sorgen agrees to dismissal of Police Chief Heather Fong. The Court also notes that Sorgen previously dismissed his *Monell* claims under 42 U.S.C. § 1983 against the City and County of San Francisco. *See* Jan. 26, 2006 Stip. & Order at 1.  Defendants also stipulated that Officer Oliver was acting in the course and scope of his employment with respect to the matters alleged in the pleadings, and that the City and County of San Francisco would therefore be obliged to indemnify him pursuant to the California Government Code (except for any award of punitive damages).

4

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 982 (9th Cir. 2001). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322-323. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.

## III. DISCUSSION

### A. Plaintiff's Claim that he was Falsely Arrested under the Fourth Amendment

A person is falsely arrested under the Fourth Amendment if he or she is arrested without a warrant or probable cause. *McKenzie v. Lamb*, 738 F.2d 1005, 1007-08 (9th Cir. 1984). Probable cause exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The evidence need support "'only the probability, and not a prima facie showing, of criminal activity.'"*Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002) (citation omitted). Once a defendant has provided "some evidence" of probable cause, it is the plaintiff's burden to prove a lack of probable cause. *Dubner v. City and County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).

As noted above, Sorgen was arrested on two charges: (1) violation of Calif. Penal Code § 148(a), and (2) violation of Calif. Penal Code § 647(f). Each is discussed in turn below.

### 1. Arrest under California Penal Code § 148(a)

#### a. Probable cause to arrest

Calif. Penal Code § 148(a) makes it a crime to "wilfully resist[], delay[], or obstruct[] any. . . peace officer . . . in the discharge or attempt to discharge any duty." There can be no genuine dispute that Oliver was engaged in the discharge or attempted discharge of a duty at the time of the incident since he was in the process of arresting Campese and taking him into custody. It is also undisputed that Sorgen repeatedly refused to comply with Oliver's commands to move back from his position. Thus the question is whether this repeated refusal was sufficient, under all of the facts and circumstances known to Oliver, to warrant a prudent person to believe that it was probable that Sorgen was attempting to wilfully delay or obstruct Oliver in his efforts to take Campese into custody as asserted by Defendants. Even accepting Sorgen's version of the facts, the Court concludes that it was.

It is undisputed that Oliver was the only officer present at the scene in a potentially rowdy neighborhood at a very late hour and that he was in the process of arresting and transporting Campese who was intoxicated. Oliver also knew that Sorgen was a friend of Campese's and that two of their friends had already run away from Oliver. Even assuming Sorgen stayed 12-15 feet from Oliver, Sorgen's repeated refusals

6

to comply with commands to move back could have reasonably lead Oliver to believe that Sorgen was willfully attempting to interfere with or delay the arrest of his friend. While Sorgen contends that he had no subjective intent to interfere with the arrest his outward behavior of repeated defiance, along with the surrounding circumstances, provided Oliver with reasonable cause to believe otherwise. Indeed, given all of the undisputed facts discussed above, and accepting Sorgen's version of the facts where the parties' stories diverge, it appears that no reasonable jury could find that a prudent officer did not possess sufficient facts to warrant a reasonable belief that Sorgen was probably violating § 148(a).

Sorgen argues that probable cause was lacking as a matter of law because Sorgen had a First Amendment right to stand where he was and observe the arrest, and therefore Oliver's commands to move back were unlawful. And since the commands were unlawful, Sorgen concludes, his failure to comply with them can not provide probable cause to arrest under § 148. The Court concludes, however, that Sorgen's reliance on the First Amendment to defeat the existence of probable cause is misplaced.

The Supreme Court has specifically held that onlookers have no First Amendment right to observe arrests. *See Colten v. Kentucky*, 407 U.S. 104, 109 (1972) (finding that friend of person being cited by police had "no [First Amendment] constitutional right to observe the issuance of [the citation] or to engage the issuing officer in conversation at that time"). As the *Colton* court held, officers are "entitled to enforce [the laws] free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction." *Id.* [2]  Thus, Sorgen's assertion that the First

---

[2] As Sorgen points out, San Francisco Police Department policy provides that the public can observe arrests except when the safety of the officer or suspect is jeopardized  *See* San Francisco Police Department General Order 5.07, Rosenfeld Decl., Exh. G. (public should be allowed to "remain in the immediate vicinity to witness  stops, detentions and arrests . . . except. . . [w]hen the safety of the officer or the suspect is jeopardized").  This internal policy does not , however, establish that such a right exists as a matter of constitutional law or defeat a claim for qualified immunity). *See Case v. Kitsap County Sheriff's Dep't.*, 249 F.3d 921, 929-30 (9th Cir. 2001) (whether police violate a state or internal department policy is not focus of inquiry in § 1983 case); *see also People v. Superior Court (Wilson)*, 18 Cal. App.4th

7

1 Amendment protected his conduct (of refusing to comply with orders to move back from
2 an on-going arrest) fails because he has no First Amendment right to observe an arrest.

3 The public does have a First Amendment right to criticize the police, and even
4 yell profanities at the police and make obscene gestures, without getting arrested solely
5 for such speech. *See e.g. City of Houston v. Hill*, 482 U.S. 451 (1987)*; Duran v. City of*
6 *Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1989). As such "*verbal* protests" [can] not
7 support an arrest under § 148." *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir.
8 1995) (emphasis added). This line of cases, however, does not allow a person to avoid
9 arrest or conviction for *the conduct* of refusing to comply with a police order to move
10 back during an arrest. *See, e.g., U.S. v. Poocha*, 259 F.3d 1077, 1082-83 (9th Cir. 2001)
11 (while bystander could not be convicted for yelling obscenities at police he could be
12 convicted for defying order to leave scene of arrest).

13 Sorgen also argues that the failure to comply "with alacrity" to a police order does
14 not provide grounds for arrest under § 148(a). While this is correct, *see e.g. People v.*
15 *Quiroga*, 16 Cal. App.4th 961, 966 (1993), this is not a case where the party at issue
16 ultimately complied with a police order, albeit after initially failing to cooperate. Here, it
17 is undisputed that Sorgen *never* complied (or expressed an intent to comply), even after
18 repeated commands and being physically pushed backward. Instead he explicitly
19 expressed at all times that had no intention of complying because he believed that he had
20 a right to be where he was. Accordingly, the "slow to comply" doctrine does not apply
21 to this case.

22         b. Qualified Immunity

23 Even assuming, *arguendo*, that Defendants were not entitled to a summary
24 adjudication of the issue of probable cause, Oliver is also protected from suit for
25 damages by qualified immunity. In assessing qualified immunity, courts first consider
26 whether, taken in the light most favorable to the party asserting the injury the facts show

27

28 31, 38 (1993) (violation of California Highway Patrol General Order does not create liability under state law).

8

1 a violation of a constitutional right – which in this case would be a violation of the
2 Fourth Amendment. Oliver concedes this point for purposes of his qualified immunity
3 argument. Second, the Court asks whether the officer could nevertheless have
4 "reasonably but mistakenly believed that his or her conduct did not violate a clearly
5 established constitutional right." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th
6 Cir. 2001). This is "an objective standard" that leaves "'ample room for mistaken
7 judgments.'" *Duran*, 904 F.2d at 1376. Indeed the standard protects "'all but the
8 plainly incompetent or those who knowingly violate the law.'" *Franklin*, 312 F.3d at 437
9 (citations omitted). In the instant context, this second step can be framed as whether a
10 "reasonable officer could have believed that probable cause existed to arrest the
11 plaintiff." *Id.*

12 For all of the reasons set forth above, this Court concludes that Oliver could have
13 reasonably believed that probable cause existed to arrest Sorgen for violation of §148,
14 even if this belief later proved to be in error. Accepting Sorgen's version of the disputed
15 facts, Oliver could still have reasonably believed that he could lawfully arrest Sorgen for
16 his repeated refusal to obey his orders while attempting to effectuate an arrest and that
17 this would not violate any clearly established constitutional right S*ee e.g. In re*
18 *Muhammed C.,* 95 Cal. App.4th 1325, 1330-31(2002) (upholding § 148 conviction
19 where defendant failed to move back from window of police car in which suspect was
20 seated); *cf. People v. Roberts,* 131 Cal. App.3d Supp. 1(1982) (upholding § 148
21 conviction where defendant interfered with sobriety test by ignoring numerous requests
22 to move away and back into vehicle and getting into scuffle with officers). Accordingly,
23 the Court concludes that Oliver is also entitled to qualified immunity with respect to the
24 Plaintiff's claim that he was falsely arrested for violating § 148(a).

9

2. Arrest under Calif. Penal Code § 647(f)

As noted above, Sorgen also contends that there was no probable cause to arrest him for a violation of the public intoxication statute, Calif. Penal Code § 647(f). This question is moot, however, because if a person is arrested on multiple charges, a finding of probable cause for any single charge defeats a federal claim of false arrest. *See Jaegley v. Couch*, 439 F.3d 149, 154 (2nd Cir. 2006) ("a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge. . ."); *Barry v. Fowler*, 902 F.2d 770, 773 n. 5 (9th Cir. 1990).   Given this Court's conclusion that there was probable cause, as a matter of law, to arrest Plaintiff under § 148(a), Plaintiff's Fourth Amendment claim for false arrest necessarily fails regardless of whether Oliver also had probable cause to arrest Sorgen under § 647(f). Accordingly, the Court need not reach this issue and instead finds that Defendants are entitled to summary judgment on Plaintiff's claim for false arrest under federal law.

B. Excessive Force claim under the Fourth Amendment

Unlike many excessive force cases, the amount of force used is not in dispute. Rather the parties agree that force was used twice: (1) to push Sorgen backward with an open hand on his chest (either from a crouched position or a running start), and (2) to strike Sorgen three times with the baton on his leg, buttocks, and back of the knee. There is also no dispute that Sorgen suffered no injury from the push and that he suffered bruises from the three baton strikes which went away after a few weeks. There is also no dispute that he did not seek any medical attention.

Sorgen contends that the force was excessive as a matter of law because there was no probable cause to arrest. Even assuming *arguendo* that the two issues were somehow related, this Court has already concluded that there was probable cause to arrest. Accordingly, the premise of Plaintiff's argument is not valid. Defendants, on the other hand, contend that the amount of force used was not excessive as a matter of law

10

1  and that Oliver is protected by qualified immunity. This Court agrees.

2  The Fourth Amendment requires that officers use only such force as is
3  "objectively reasonable" under the circumstances.   In making this determination, courts
4  must balance the amount of force used against the amount of force needed. *Liston v.*
5  *County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997).   The reasonableness of the force
6  must be judged from the perspective of a "reasonable officer on the scene, rather than
7  with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Thus
8  the court's assessment must make "allowance for the fact that police officers are often
9  forced to make split-second judgments – in circumstances that are tense, uncertain, and
10 rapidly evolving . . ." *Id*. at 397.

11 Based on the undisputed facts, and resolving any disagreements in Plaintiff's
12 favor, the Court finds that the force used was reasonable under the standard articulated
13 above.  There is no dispute that Sorgen repeatedly refused to comply with Oliver's
14 commands to move back.  Oliver eventually employed a very minimal amount of force –
15 a push backwards which caused no injury.  This minimal amount of force was reasonable
16 given that Oliver's prior verbal commands had proven unsuccessful.  When the push had
17 no effect Sorgen used his baton to strike Sorgen three times on his legs and buttocks.
18 While a baton clearly has the potential to inflict very substantial injuries Oliver did not
19 use it in this manner here.  Rather, he used the baton in a manner that only caused
20 temporary bruises and no serious injury.  As such, the Court concludes that this modest
21 escalation of force was not excessive given the tense situation and Sorgen's refusal to
22 comply with Oliver's commands to move back even after being physically pushed to do
23 so.  While an explicit warning prior to using the baton might have been desirable this
24 failure did not, as Plaintiff argues, render the force objectively unreasonable.  Similarly,
25 using 20/20 hindsight Oliver might have accomplished his objective with two rather than
26 three strikes. This Court will not, however, second guess this judgment call here given
27 the circumstances facing Oliver at the time.  Accordingly, the Court concludes that the
28 amount of force used in this case was not excessive as a matter of law under the Fourth

1 Amendment standard articulated above. *See Jackson*, 268 F.3d at 651 n.1 ("While the
2 test for reasonableness is often a question for the jury, this issue may be decided as a
3 matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's
4 force was 'objectively reasonable' under the circumstances.'").[3] As such, Defendants
5 are entitled to a summary judgment on Plaintiff's Fourth Amendment claim for excessive
6 force. *See id.* at 652 (finding use of force reasonable as a matter of law when the plaintiff
7 failed to disperse during arrest and officer sprayed chemical irritant on plaintiff's hair,
8 roughly pushed her to the ground to be handcuffed, placed knee in her back despite
9 known back and shoulder injuries, roughly pulled her up, and turned up heat in police
10 vehicle on 90-degree day).

11 Even if this Court were to find that the amount of force used in this case crossed
12 the "sometimes 'hazy border between excessive and acceptable force,'" *Saucier v. Katz*,
13 533 U.S. 194, 206 (2001) (citation omitted), Oliver would be entitled to qualified
14 immunity. Even if Oliver was mistaken in believing that the amount of force used was
15 constitutional, such mistake would not have been unreasonable under all of the
16 circumstances. He could have reasonably believed that the use of some non-lethal,
17 additional force in the face of continued defiance to an order to move back or disperse
18 during an arrest was not clearly unconstitutional. *See e.g. Jackson,* 268 F.3d 646. Nor is
19 it clearly established that any use of a baton is unlawful under the circumstances
20 presented here.

## C. First Amendment Claim

Defendants also move for summary judgment on Plaintiff's claim under the First
Amendment. As discussed above, Sorgen does not have a First Amendment right to
observe an arrest. Accordingly, any First Amendment claim based on this supposition

---

[3] To the extent that Plaintiff argues that the use of any force was unreasonable as a matter of law because Plaintiff was merely exercising his First Amendment rights to observe the arrest, that argument fails given that the Court has found that Plaintiff did not have a First Amendment right to stand at a particular spot to observe the arrest or to otherwise refuse to move back from an on-going arrest.

must fail. Sorgen also contends, however, that Oliver arrested him in retaliation for exercising his First Amendment free speech rights to criticize Oliver in the performance of his duties. *See* Pl.'s Opp. at 12; *Duran*, 904 F.2d 1372 (Officer retaliated against individual in violation of First Amendment when Officer arrested him for profanities directed toward Officer).

A number of courts have held, however, that where there is probable case to arrest, the arrestee can not maintain a separate claim for retaliation under the First Amendment based on speech that was made prior to the arrest. "When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested." *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) (relying in part on *United States v. Rubio, as modified*, 727 F.2d 786, 791 (9th Cir. 1984)). Thus in *Redd* the Court concluded that "[b]ecause . . . the officers had arguable probable cause to arrest [the plaintiff] for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims." *See also Dahl v. Holley,* 312 F.3d 1228, 1236 (11th Cir. 2002) ("Whatever the officers' motivation, however, the existence of probable cause to arrest Dahl defeats her First Amendment [retaliation] claim."); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2nd Cir. 2001) (First Amendment retaliation claim failed "because defendants had probable cause to arrest plaintiff, [and therefore] an inquiry into the underlying motive for the arrest need not be undertaken"); *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000); *Merckle v. Upper Dublin Sch. District*, 211 F.3d 782, 796-97 (3rd. Cir. 2000); *Skoog v. Clackamas County*, 2004 WL102497 *22 (D. Or 2004).

Under the above authority, Defendants are entitled to a summary judgment on Sorgen's First Amendment retaliation claim as a matter of law given this Court's finding that there was probable cause to arrest Sorgen under Calif. Penal Code § 148. Even assuming *arguendo* that an inquiry into Oliver's motivation for the arrest is appropriate, *see e.g. Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002), *Poole v. County of Otero*, 271

13

1  F.3d 955 (10th Cir. 2001), Sorgen has identified no statements or gestures that
2  constituted insults or other offensive speech directed at Oliver. *Cf. Greene*, 310 F.3d at
3  892-93 (plaintiff told officer immediately prior to arrest that officer was really being an
4  asshole and was stupid).  Further, Oliver is entitled to qualified immunity on this claim
5  since it is not clearly established in this Circuit that an arrest with probable cause could
6  also violate Sorgen's First Amendment rights.  *Skoog*, 2004 WL 102497 * 22
7  ("Furthermore, it is difficult to say  'clearly established' law provides that an officer who
8  [arrests] pursuant to a reasonable belief probable cause exists but who also acted with
9  some retaliatory motive towards the plaintiff violates the constitution" given that case
10 law is unsettled.)

Accordingly, the Court finds that Defendants are entitled to a summary judgment with respect to Sorgen's First Amendment claim.

### D. Plaintiff's State Law Claims

#### 1. Claims for False Arrest and Assault and Battery/Excessive Force.

State and federal law are consistent with respect to the standard for probable cause to arrest. *See People v. Memro*, 12 Cal. 4th 783D, 843 (1995); Cal. Penal Code § 847(b)(1).  Accordingly,  Plaintiff's claim that there was no probable cause to arrest under state law fails for the same reasons as those discussed above with respect to his Fourth Amendment false arrest claim.

Likewise, the law governing Plaintiff's state law claim for assault and battery/excessive force is the same as that used to analyze Plaintiff's claim for excessive force under the Fourth Amendment.  *See e.g. Edson v. City of Anaheim*, 63 Cal. App.4th 1269, 1274 (998).   Accordingly, Plaintiff's claim of assault and battery/excessive force under state law fails for the same reasons as those discussed above with respect to his Fourth Amendment claim for excessive force.

14

### 2. Claim for False Imprisonment

Plaintiff also asserts a common law tort claim for false imprisonment. Specifically, he claims that, after being arrested, he was improperly held in custody overnight instead of being "cited and released" pursuant to Calif. Penal Code § 853(6)(i). This section provides that a person arrested for a misdemeanor "*shall be* [cited and] released" in accordance with certain procedures, rather than taken into custody, unless one of several enumerated exceptions apply. *Id*. (emphasis added). Sorgen contends that none of the exceptions apply and therefore he was falsely imprisoned when he was detained overnight instead of being cited and released.

It is well established that governmental defendants are not immune from tort claims of false imprisonment.[4] And while there is a paucity of law under § 853(6)(i), Defendants do not dispute that a violation of this statute could support a claim for false imprisonment.[5] Defendants also concede that there is no statutory authority that extends a qualified immunity to police officers who detain arrestees pursuant to the exceptions set forth in § 853(6)(i).[6] Defendants do argue, however, that two of the enumerated exceptions to the mandatory "cite and release" requirement apply here: (1) if the arrestee is "so intoxicated that he or she could have been a danger to himself or herself or to

---

[4] While Calif. Gov't. Code § 820.4 provides that, in general, public employees are not liable for acts or omissions, "exercising due care, in the execution or enforcement of any law," the section expressly excludes the tort of false imprisonment from its scope: "Nothing in this section exonerates a public employee from liability for. . . false imprisonment." *See also Steven v. Rifkin*, 608 F.Supp. 710, 729 (D.C. Cal. 1984) (Pursuant to § 820.4, governmental defendants remain liable in tort to plaintiffs for false imprisonment.).

[5] To establish a claim of false imprisonment, the plaintiff must establish (1) non-consensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief. *Easton v. Sutter Coast Hospital*, 80 Cal. App.4th 485, 496 (2000); *See also Martinez v. City of Los Angeles*, 141 F.3d 1373, 1380-81 (9th Cir. 1998) (prolonged detention claim).

[6] In California, governmental immunities are governed by statute. *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 756 (1997). As noted above, California Penal Code § 847(b)(1) provides that an officer has no civil liability for damages where "at the time of the arrest" the officer "had reasonable cause to believe the arrest was lawful." While this provision covers the arrest, itself, Defendants have not established that it extends to claims of false imprisonment beyond the arrest itself.

15

others," and (2) if there is a "reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be imminently endangered by release of the person arrested." Calif. Penal Code § 853.6(I)(1), (7).

Both parties contend that the facts support granting summary judgment in their favor on this claim. This Court concludes, however, that whether either exception applies is a disputed issue of fact that can not be resolved on summary judgment. Depending on the inferences drawn, and how factual disputes are resolved, a reasonable juror could rationally find in favor of either party with respect to the applicability of the exceptions in this case. Accordingly, the Court denies both parties' motions for a summary judgment on this claim.

### 3. State law claim for malicious prosecution

Sorgen concedes that Calif. Gov't. Code § 821.6 generally immunizes police officers from claims of malicious prosecution but asserts that *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) creates an applicable exception. *Harris*, however, is completely inapposite in that it is a *Bivens* case originating out of Idaho and includes no discussion of California state law immunities in general or Calif. Gov't Code § 821.6. in particular. Defendants are entitled to a summary judgment that Sorgen's claim for malicious prosecution is barred by § 821.6.

### 4. State law claim for negligent supervision against San Francisco

Plaintiff asserts a claim that the City of San Francisco was negligent in hiring, training, supervising and/or disciplining Oliver in order to prevent or ameliorate the alleged wrongs committed in this case.

The California Supreme Court recently held, in *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175 (2003) that public entities in California are immune from direct common law claims of negligence under the California Tort Claims Act, Calif. Gov't. Code § 815(a), unless there is a statutory basis for the negligence

claim. Defendants argue that Plaintiff has identified no state statutory basis for its claim that the City of San Francisco is directly liable for the negligent, hiring, supervision, or training of its employees, and therefore this claim must be dismissed. *See Munoz v. City of Union City*, 120 Cal.App. 4th 1077 (2004) (finding that Union City was immune from direct claim that it had negligently trained, supervised, and disciplined police officers involved in a shooting because the plaintiffs could not identify a statutory basis for the claim or a statute creating a specific duty of care). Similarly, here, Plaintiff fails to identify any such statutory basis. Accordingly, Defendants are entitled to a summary judgment on this claim.

> 5. <u>State law claims against Oliver for negligence, and negligent and intentional infliction of emotional distress, and claims for violation of the Banes Act</u>

In his papers, Plaintiff does not dispute that Defendants are entitled to judgment on these claims. *See also Amylou R. v. County of Riverside*, 28 Cal. App.4th 1205 (1994) (negligence and emotional distress claims barred ); *Johnson v. City of Pacifica,* 4 Cal. App.3d 82, 87 (1970) (negligence); *O'Toole v. Superior Court*, 140 Cal. App.4th 488 (2006) (Bane Act claim barred).

IV. <u>DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EVIDENCE</u>

Defendants make objections to certain statements contained in Sorgen's declaration submitted in support of Plaintiff's Motion for Partial Summary Judgment. The first two objections are denied as moot because the Court did not rely on the phrases to which Defendants object. The third objection is overruled. The Court considers Sorgen's statement describing his distance from Oliver to be a proper statement of his own opinion. The fourth objection is also overruled in that the Court does not find a contradiction between the declaration and deposition testimony.

V.  CONCLUSION

In light of all of the above, and good cause appearing, it is HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment is granted in part and denied in part consistent with the above.

2. Plaintiff's Motion for Partial Summary Judgment is denied.

3. Plaintiff's action is dismissed with the exception of Plaintiff's common law tort claim for false imprisonment based on an alleged violation of California Penal Code § 853.6(i) .

4. The parties shall contact Magistrate Judge Larson's chambers as soon as possible to schedule a follow-up mandatory settlement conference.

5. At the hearing on this matter, the Court rescheduled the Pretrial Conference in this matter for September 29, 2006 at 10:00 a.m.  All other Pre-trial dates, however, shall remain as set forth in the Court's Order for Pretrial Preparation and shall not be affected by the change in the date for the Pretrial Conference.

**IT IS SO ORDERED.**

Dated: September 7, 2006

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE